STEARNS BANK. N.A.

*We Get The Job Done!*™

4191 2nd Street South ♦ St. Cloud, MN 56301
320-253-6607 or 1-800-320-7262 ♦ Fax: 320-253-3051
www.stearns-bank.com ♦ Member FDIC. Equal Housing Lender ⌂

*Via Certified Mail*

August 10, 2010

United States Bankruptcy Court - District of Nevada
Bankruptcy Clerk's Office
Honorable Gregg W. Zive
300 Booth Street
Reno, NV 89509

**RE:    Annie T. Christian ("Debtor")**
**Case Number 10-52615-gwz**
**Written Objection to Debtor's Ch. 13 Plan**

Dear Judge Zive:

Stearns Bank, N.A. ("Stearns") is listed as a secured creditor under the Debtor's Ch. 13 filing. Stearns is the designated servicer for loans purchased by FNBN-RESCON I, LLC ("FNBN") from the Federal Deposit Insurance Corporation ("FDIC"), as receiver for First National Bank of Nevada ("First Nevada"). On or about February 5, 2009, FNBN and the FDIC, as receiver for First Nevada, entered into a Loan Purchase and Sale Agreement. As a result, FNBN acquired all of the interests of the FDIC, as receiver for First Nevada, in the Loan, the documents supporting the Loan and any payment and performance obligations evidenced thereby.

According to the documents supporting the Loan, First Nevada made a construction loan in the original principal amount of $355,000 ("Loan") to Debtor, pursuant to that Residential Construction Loan Agreement dated July 25, 2007 ("Loan Agreement"), between First Nevada and Debtor. The Loan is evidenced by that certain Promissory Note dated July 25, 2007 (as extended and modified, "Note") in the original principal amount of $355,000, executed by Debtor and payable to the order of First Nevada.

The Note is secured by that Deed of Trust dated July 25, 2007 ("Deed of Trust"), executed by Debtor, as trustor, encumbering Debtor's interest in the certain real property located at 247 West Pueblo St., Reno, NV on which is located a completed duplex ("Property"). The Deed of Trust was recorded on July 30, 2007, as Doc. No. 3559958 in the Office of the Washoe County Recorder, Nevada. The Property is an investment/rental property and is not owner/debtor-occupied.

The Note was extended and modified by that Extension and Modification Agreement dated October 1, 2008, that Change in Terms Agreement dated April 29, 2009, and that Change in Terms Agreement dated September 16, 2009.

Debtor filed this chapter 13 case on June 30, 2010, the day before the Note matured.

FNBN is the secured creditor in this chapter 13 case. Please accept this letter as FNBN's written objection to the Debtor's Ch. 13 plan.

The Debtor's proposed Ch. 13 plan provides for the Loan to be paid outside of the plan. The proposed plan notes a monthly payment amount of $1,970.00. This payment amount reflects the interest-only payments required under the Loan which matured on July 1, 2010. We would be open to discussing an extension of the loan with principal and interest payments going forward. However, it is likely that the payments required under any loan extension may be higher than what is indicated on the Debtor's proposed plan.

Additionally, we recently learned that the two (2) rental units are not under any lease or rental agreement and the tenants are paying month-to-month rent totaling $1,900.00.

A copy of the Proof of Claim and all attachments filed with the court are included with this written objection.

Please contact me at 320-258-4826 or ambers@stearnsbank.com if you have any questions.

Sincerely,

Amber Shimpa
Stearns Bank, N.A.


Enclosures


**Copies delivered via certified mail to:**

*Debtor*
Annie T. Christian
dba Annie Christian Real Estate Grp, LLC
fdba Ani Home Care
130 Virgil Drive
Sparks, NV 89436

*Debtor's Attorney*
Scott N. Tisevich
241 Ridge Street, Suite 300
Reno, NV 89501

*Bankruptcy Trustee*
William A. Van Meter
1225 Westfield Ave., Suite 4
Reno, NV 89509

*US Trustee*
300 Booth Street, Room 2129
Reno, NV 89509

B10 (Official Form 10) (04/10)

| UNITED STATES BANKRUPTCY COURT District of Nevada | PROOF OF CLAIM |
|---|---|

| Name of Debtor: ANNIE T CHRISTIAN | Case Number:   10-52615 |
|---|---|

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>FNBN-RESCON I. LLC | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>FNBN-RESCON I, LLC<br>c/o Stearns Bank, N.A.<br>4191 2nd St. S.<br>St. Cloud, MN 56301 | Court Claim Number: _____<br>(if known)<br><br>RECEIVED AUG 16 PM 1: |
| Telephone number:   320-253-6607 | Filed on: |
| Name and address where payment should be sent (if different from above):<br><br><br>Telephone number: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:**   $367,440.73   See attached payoff statement.<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
| **2. Basis for Claim:**   Secured first deed of trust on Debtor's property at 247 W. Pueblo<br>(See instruction #2 on reverse side.) | ☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** 4362<br><br>3a. Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5). |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>Nature of property or right of setoff: ☒ Real Estate   ☐ Motor Vehicle   ☐ Other<br>Describe:<br><br>Value of Property: $259,000.00*    Annual Interest Rate 6.75%<br><br>Amount of arrearage and other charges as of time case filed included in secured claim,<br><br>if any: $2,005.61      Basis for perfection: Recorded Deed of Trust<br><br>Amount of Secured Claim: $259,000.00      Amount Unsecured: $108,440.73 | ☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | **Amount entitled to priority:**<br><br>$_____ |
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | *Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |
| Date: 8-10-10 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>*Amber Shimpa*   V.P. Stearns Bank<br>Amber Shimpa | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

*Value of property is based on a Broker Price Opinion dated 6/22/10 and prepared by Chase International of Reno, NV.

68304020678033

STEARNS BANK N.A.
4191 2ND ST S.
ST. CLOUD MN 56301

## LOAN PAYOFF STATEMENT

ANNIE T CHRISTIAN
130 VIRGIL DR
SPARKS NV 89441-8601

| | |
|---|---|
| Loan Number: | 4362 |
| Date Quoted: | 8/9/10 |
| Payoff Good To: | 6/30/10 |

COLLATERAL: MULTIPLE; 247 W PUEBLO ST, RENO NV 89509

| | | |
|---|---|---:|
| PRINCIPAL | $ | 355,000.00 |
| INTEREST TO JUNE 30, 2010 | $ | 1,903.86 |
| DEFERRED INTEREST | $ | 10,435.12 |
| LATE CHARGES | $ | 101.75 |

**NET AMOUNT DUE =**         **$ 367,440.73**

**One Day's Interest:**         **$65.65**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*ALL PAYOFFS GREATER THAN $100,000.00\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*MUST BE RECEIVED VIA WIRE TRANSMISSION\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

ALL PAYOFFS MUST BE RECEIVED BY THE DATE LISTED ABOVE AND BY THE DEADLINE
LISTED BELOW.

**WIRE INSTRUCTIONS**
**WE ARE ON THE FED LINE!**
**OUR ABA #091910455/ACCOUNT # (SEE LOAN NUMBER ABOVE)**

**WIRE DEADLINES:  MONDAY–THURSDAY: 2:00 PM CST**
**FRIDAY: 1:00 PM CST**

**IF THERE ARE ANY QUESTIONS, PLEASE CALL LOAN OPERATIONS AT 320-253-6607**

PAYOFF OF LOAN CONSTITUTES FULL AND COMPLETE AND FINAL SATISFACTION AND COMPROMISE AND RELEASES AND WAIVER OF ALL CLAIMS AGAINST BANK. Payoff of Loan constitutes Full and Final Satisfaction and Compromise of all claims, demands, causes of action, whether in tort, contract, statute or otherwise, against Bank by Borrower, guarantors, or others paying off the Loan or benefiting thereby. In consideration for the payoff of the Loan, Borrower, guarantors, and all others hereby release Bank and all of its past and present employees, officers, directors, shareholders, agents, affiliates, parent companies, and attorneys from any and all claims, demands, causes of action, whether in tort, contract, statute, or otherwise, known or unknown, asserted or unasserted, relating to the Loan and the parties' relationship to the Bank. This intended to be a full and complete release and nothing is reserved in favor of Borrower, guarantors, and others paying off the loan or benefiting thereby.

 

Loan Number _____ 4362 _____

Maturity Date __ August 1, 2008 __

# PROMISSORY NOTE
### (Residential Construction - Interest Only - Prime Rate)

**DATE AND PARTIES** The date of this Promissory Note is __ July 25 __ , 20 07 The parties and their addresses are

LENDER

FIRST NATIONAL BANK OF NEVADA
6275 NEIL ROAD
RENO, NV 89511

BORROWER
ANNIE T CHRISTIAN

**1 DEFINITIONS** As used in this Note, the terms have the following meanings

**A Borrower** Borrower refers to each borrower signing this Note, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note

**B Lender** Lender refers to the lender, with its participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan

**C Note** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note

**D Loan** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note

**E Property** Property is any property, real, personal or intangible, that secures Borrower's performance of the obligations of this Loan

**F Percent** Rates and rate change limitations are expressed as annualized percentages

**2 PROMISE TO PAY** For value received, Borrower promises to pay Lender or its order, at its address, or at such other location as Lender may designate, the principal amount of $ 355,000 00 ____ (Principal) or so much of this amount as may be advanced from time to time under the terms of this Note, plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Note matures or this obligation is accelerated

All advances made will be made subject to the terms of a separate construction loan agreement and all other terms and conditions of this Loan

**3 INTEREST** The Interest Rate may change during this term of this Note

**A Variable Rate**

(1) **Index** Interest will accrue on the unpaid Principal balance of this Note at an interest rate (Interest Rate) equal to (i) __ 1 0000 __ percent plus (ii) the "prime rate" published from time to time by the Wall Street Journal (currently __ 8 2500 __ percent) The result of this calculation will be rounded to the nearest 125 percent The Interest Rate may change daily Lender does not guaranty by selecting this Index, or the margin, that the Interest Rate on this Note will be the same rate Lender charges on any other loans or class of loans Lender makes to Borrower or other borrowers If this Index is no longer available, Lender will substitute a similar index and Lender will give Borrower notice of Lender's choice

(2) **Limitations** The Interest Rate will never exceed the greater of (i) __ 15 2500 __ percent or (ii) the maximum amount allowed by applicable law, nor will the Interest Rate be less than __ 9 2500 __ percent

(3) **Effect of Variable Rate** A change in the Interest Rate will change the amount of scheduled payments and the amount of the final payment

ORIGINAL





**B  Post-Maturity Interest**  After maturity or acceleration, interest will accrue on the unpaid Principal balance at the Interest Rate in effect from time to time, until paid in full

**C  Maximum Interest Amount**  Any amount assessed or collected as interest under the terms of this Note or obligation will be limited to the maximum lawful amount of interest allowed by state or federal law  Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance  Any remainder will be refunded to Borrower

**D  Accrual**  During the scheduled term of this Loan, interest accrues using an Actual/365 days counting method

**E  Interest Reserve Authorization** (Applicable only if this box is checked ☒)  The undersigned understands and agrees that there shall be reserved from the construction loan proceeds, before any disbursement is made to any party, an amount the Lender reasonably estimates to be the interest that will accrue on the construction loan payouts made by Lender from time to time  Such amount shall be referred to as the "Interest Reserve "  Borrower acknowledges that interest will accrue on the construction loan proceeds paid out during the term of the construction loan, and that Lender will monthly deduct from the Interest Reserve all interest accrued on the aggregate amount disbursed under the construction loan  The Interest Reserve is not deemed disbursed until paid to Lender for interest that has accrued, and Lender will pay no interest on the Interest Reserve  Borrower further agrees that, should the Interest Reserve used to pay accrued interest due Lender be fully paid prior to the loan maturity, or repayment of the loan, Borrower shall make any additional accrued interest payments to Lender on a monthly basis until the Note is fully paid  Borrower further understands that by reason of the Interest Reserve, the amount of funds available for the construction of Borrower's residence shall be lowered by the amount of the Interest Reserve  Furthermore, Borrower understands that there shall be no refund due and owing in the event that the entire amount of the Interest Reserve is not used for the monthly interest payments  Rather, the principal balance shall be reduced by any undisbursed amount held in the Interest Reserve

**4  REMEDIAL CHARGES**  In addition to interest or other finance charges, Borrower agrees that Borrower will pay these additional fees based on Borrower's method and pattern of payment  Additional remedial charges may be described elsewhere in this Note

**A  Late Charge**  If a payment is more than 15 days late, Borrower will be charged 5 000 percent of the Unpaid Portion of Payment  Borrower will pay this late charge promptly but only once for each late payment

**B  Returned Check Charge**  Borrower agrees to pay a fee not to exceed $20 00 for each check, negotiable order of withdrawal or draft Borrower issue in connection with this Loan that is returned because it has been dishonored

**C  Stop Payment Charge**  A stop payment charge equal to $20 00

**5  PAYMENT**  Borrower agrees to pay this Note in installments of accrued interest beginning ___September 1___, 20_07_, and then on the 1st day of each month thereafter  Borrower agrees to pay the entire unpaid Principal and any accrued but unpaid interest on _August 1_____, _2008_   Payments will be rounded to the nearest $ 01  With the final payment Borrower also agrees to pay any additional fees or charges owing and the amount of any advances Lender has made to others on Borrower's behalf

Each payment Borrowers make on this Note will be applied first to any charges that Borrower owes other than principal and interest then to interest that is due, and finally to principal that is due  The actual amount of Borrower's final payment will depend on Borrower's payment record

**6  PREPAYMENT**  Borrower may prepay this Loan in full or in part at any time without penalty  Any partial prepayment will not excuse any later scheduled payments until Borrower pays in full

**7  LOAN PURPOSE**  The purpose of this Loan is a residential construction loan

**8  SECURITY**  This Loan is secured by separate security instruments prepared together with this Note as follows

| Document Name | Parties to Document |
| --- | --- |
| 245 1/2 W PUEBLO STREET, RENO, NV 89509 | |
| Deed Of Trust – | ANNIE T  CHRISTIAN |

**9  DEFAULT**  Borrower will be in default if any of the following occur

**A  Payments**  Borrower fails to make a payment in full when due

**B  Insolvency or Bankruptcy**  Borrowers make an assignment for the benefit of creditors or become insolvent, either because Borrower's liabilities exceed Borrower's assets or Borrower is unable to pay Borrower's debts as they become due, or Borrower petitions for protection under federal, state or local bankruptcy, insolvency or debtor relief laws, or is the subject of a petition or action under such

*Residential Construction Prime Rate – 02/2003*

ORIGINAL

 

laws and fails to have the petition or action dismissed within a reasonable period of time not to exceed 60 days

**C  Termination** Borrower dies or is declared legally incompetent

**D  Failure to Perform** Borrower fails to perform any condition or to keep any promise or covenant of this Note

**E  Other Documents** A default occurs under the terms of any other transaction document related to this Loan

**F  Other Agreements** Borrower is in default on any other debt or agreement Borrower has with Lender

**G  Misrepresentation** Borrower makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided

**H  Judgment** Borrower fails to satisfy or appeal any judgment against Borrower

**I  Forfeiture** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority

**J  Name Change** Borrower changes its name or assumes an additional name without notifying Lender in writing before making such a change

**K  Property Transfer** Borrower transfers all or a substantial part of its money or property to another person or entity

**L  Property Value** The value of the Property declines or is impaired

**M  Material Change** Without first notifying Lender, there is a material change in Borrower, including ownership of property and financial conditions

**N  Insecurity** Lender reasonably believes that Lender is insecure

**10  ASSUMPTIONS** Someone buying the Property cannot assume the obligation  Lender may declare the entire balance of the Note to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, or transfer of the Property

**11  WAIVERS AND CONSENT** To the extent not prohibited by law, Borrower waives protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor

**A  Additional Waivers by Borrower** In addition, Borrower, and any party to this Note and Loan, to the extent permitted by law, consents to certain actions Lender may take, and generally waives defenses that may be available based on these actions or based on the status of a party to this Note

(1) Lender may renew or extend payments on this Note, regardless of the number of such renewals or extensions

(2) Lender may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer

(3) Lender may release, substitute or impair any Property securing this Note

(4) Lender, or any institution participating in this Note, may invoke Lender's right of set-off

(5) Lender may enter into any sales, repurchases or participations of this Note to any person in any amounts and Borrower waives notice of such sales, repurchases or participations

(6) Borrower agrees that anyone signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note

(7) Borrower agrees that Lender may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances

**B  No Waiver by Lender** Lender's course of dealing, or its forbearance from, or delay in, the exercise of any of its rights, remedies, privileges or right to insist upon Borrower's strict performance of any provisions contained in this Note, or other Loan documents, shall not be construed as a waiver by Lender, unless any such waiver is in writing and is signed by Lender

**12  REMEDIES** After Borrower defaults, and after Lender gives any legally required notice and opportunity to cure the default, Lender may at its option do any one or more of the following

*Residential Construction Prime Rate – 02/2003*



 

A  Acceleration  Lender may make all or any part of the amount owing by the terms of this Note immediately due

B  Sources  Lender may use any and all remedies Lender has under state or federal law or in any instrument securing this Note

C  Insurance Benefits  Lender may make a claim for any and all insurance benefits or refunds that may be available on Borrower's default

D  Payments Made On Borrower's Behalf  Amounts advanced on Borrower's behalf will be immediately due and may be added to the balance owing under the terms of this Note, and accrue interest at the highest post-maturity interest rate

E  Termination  Lender may terminate Borrower's right to obtain advances and may refuse to make any further extensions of credit

F  Set-Off  Lender may use the right of set-off  This means Lender may set-off any amount due and payable under the terms of this Note against any right Borrower has to receive money from Lender

Borrower's right to receive money from Lender includes any deposit or share account balance Borrower has with Lender, any money owed to Borrower on an item presented to Lender or in its possession for collection or exchange, and any repurchase agreement or other non-deposit obligation  "Any amount due and payable under the terms of this Note" (as used above) means the total amount to which Lender is entitled to demand payment under the terms of this Note at the time of Lender's set-off  Subject to any other written contract, if Borrower's right to receive money from Lender is also owned by someone who has not agreed to pay this Note, its right of set-off will apply to Borrower's interest in the obligation and to any other amounts Borrower could withdraw on its sole request or endorsement
Its right of set-off does not apply to an account or other obligation where its rights arise only in a representative capacity  It also does not apply to any Individual Retirement Account or other tax-deferred retirement account  Lender will not be liable for the dishonor of any check when the dishonor occurs because Lender set-off against any of Borrower's accounts  Borrower agrees to hold Lender harmless from any such claims arising as a result of its exercise of its right of setoff

G  Waiver  Except as otherwise required by law, by choosing any one or more of these remedies, Lender does not give up its right to use any other remedy  Lender does not waive a default if Lender chooses not to use a remedy  By electing not to use any remedy, Lender does not waive its right to later consider the event a default and to use any remedies if the default continues or occurs again

**13 COLLECTION EXPENSES AND ATTORNEYS' FEES** On or after default, to the extent permitted by law, Borrower agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Note  Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses  These expenses are due and payable immediately  If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Note  All fees and expenses will be secured by the Property Borrower has granted to Lender, if any  To the extent permitted by the United States Bankruptcy Code, Borrower agrees to pay the reasonable attorneys' fees Lender incurs to collect this Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code

**14 INSURANCE** Borrower understands and agrees that any insurance premiums paid to insurance companies as part of this Loan Agreement will involve money retained by Lender or paid back to Lender as commissions or other remuneration

A  Insurance Warranties  Borrower agrees to purchase any insurance coverages that are required, in the amounts Lender requires, as described in this or any other documents Borrower signs for this Loan, including any security agreements related to the Loan  Borrower will provide Lender with continuing proof of coverage  Borrower will buy or provide insurance from a firm licensed to do business in the state where the Property is located and such firm will be reasonably acceptable to Lender  Borrower will have the insurance company name Lender as loss payee on any insurance policy  Lender will apply the insurance proceeds toward what Borrower owes Lender on the outstanding balance  Borrower agrees that if the insurance proceeds do not cover the amounts Borrower still owes Lender, Borrower will pay the difference  Borrower will keep the insurance until all debts secured by this agreement are paid

**15 APPLICABLE LAW** This Note is governed by the laws of the State of _Nevada_____, without giving effect to conflicts of laws principles

**16 JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS** Borrower's obligation to pay this Loan is independent of the obligation of any other person who has also agreed to pay it  Lender may sue Borrower alone, or anyone else who is obligated on this Loan, or any number of such persons together, to collect this Loan  Extending this Loan or new obligations under this Loan will not affect Borrower's duty under this Loan and Borrower will still be obligated to pay this Loan  This Agreement shall, except as otherwise provided herein, be binding upon and inure to the benefit of the successors and assigns of Lender and Borrower

*Residential Construction Prime Rate — 02/2003*

FINAL



**17  AMENDMENT, INTEGRATION AND SEVERABILITY**  This Note may not be amended or modified by oral agreement   No amendment or modification of this Note is effective unless made in writing and executed by Lender and Borrower   This Note is the complete and final expression of the agreement   If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable

**18  INTERPRETATION**  Whenever used, the singular includes the plural and the plural includes the singular   The section headings are for convenience only and are not to be used to interpret or define the terms of this Note

**19  NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS**  Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address set forth above, or to any other address designated in writing   Notice to one party will be deemed to be notice to all parties   Borrower will inform Lender in writing of any change in its name, address or other application information   Borrower will provide to Lender any financial statements or information that Lender may request   All financial statements and information Borrower gives to Lender will be correct and complete   Borrower agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve its obligations under this Loan and to confirm Lender's lien status on any Property   Time is of the essence

**20  CREDIT INFORMATION**  Borrower agrees to supply Lender with whatever information Lender reasonably request   Lender will make requests for this information without undue frequency, and will give Borrower reasonable time in which to supply the information

**21  ERRORS AND OMISSIONS**  Borrower agrees, if requested by Lender, to fully cooperate in the correction, if necessary in the reasonable discretion of Lender, of any and all loan closing documents so that all documents accurately describe the loan between Lender and Borrower   Borrower agrees to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with Lender's requests within thirty (30) days

**22  SIGNATURES**  By signing, Borrower agrees to the terms contained in this Note   Borrower also acknowledges receipt of a copy of this Note

BORROWER

_Anne T Christian_            7/27/07
ANNIE T  CHRISTIAN                Date

·~· 10/01/2008 13:08 FAX                                                                          ☒001/001

PAGE 1/1 * RCVD AT 10/1/2008 12:14:07 PM [US Mountain Standard Time] * SVR:OPSRFX0V1/1 * DNIS:7088 * CSID:775 425 2511 * DURATION (mm-ss):00-50

## EXTENSION AND MODIFICATION AGREEMENT

To:   FNB on behalf of FDIC receivership    Loan No.      4362
      17500 N. Perimeter Drive              Borrower: Annie T. Christian
      Scottsdale, AZ 85255                  Property: 245 ½ W. Pueblo Street
                                            Reno, NV 89509

This refers to the evidence by Promissory Note dated July 25, 2007 and executed by Annie T. Christian, in the original principal amount of Three Hundred Fifty Five Thousand dollars and 00/100 ($355,000.00) and upon which interest at the rate of Prime + 1.0% is paid through September 1, 2008.

Request is hereby made that you accept payment of the remaining principal balance of $355,000.00 at the time or times, in the following manner.

ON DEMAND, if no demand is made then on January 1, 2009 ("Maturity"), at which time the unpaid principal balance will be due and payable. For value received, I promise to pay, in lawful money of the United States of America, to the order of FDIC Receiver for First National Bank of Nevada at the above address, Three Hundred Fifty Five Thousand dollars and 00/100 ($355,000.00) with interest at the rate of Prime + 1.0% per annum beginning on September 1, 2008 and payable with payment due October 1, 2008, and continuing on the 1st of every month until Maturity.

In consideration of your granting said modification and your acceptance thereof, and your forbearance to enforce payment except as herein above provided, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned, jointly, severally and unconditionally, promise and agree to pay the same with the interest hereon within the time and in the manner provided, together with attorney's fees, costs of collection, and other sums provided for in said Note and any Deed of Trust, security agreement, or other document. In further consideration of said modification, presentment, demand protest, notice of protest, notice of dishonor, and notice of non-payment to the makers, endorsers, and guarantors are hereby waived.

Any and all securities for said principal obligation held by you, including the encumbrance, may be enforced by you concurrently or independently in such order as you may determine, and with reference to any such security in addition signed, exchange, substitute, or release such security without affecting any one or more of the parties thereto or to the above obligation, or permit the liability of said party or parties to terminate without affecting the liability of any of the other party or parties liable thereon.

This agreement is a modification only, and not a novation; and except as herein provided, all of the terms and conditions of said Note and of any Deed of Trust, security agreement or other document shall remain in full force and effect.

Dated this 1st day of October, 2008.

_Annie T. Christian_
Annie T. Christian

FNB on behalf of FDIC Receivership

Approved By

_Ronan Aderhold_
Ronan Aderhold
SVP Risk Management

Oct 01 08 12:16p          Annie Christian          775-425-2511          p.1

PAGE 1/1 * RCVD AT 10/1/2008 1:53:50 PM [US Mountain Standard Time] * SVR:OPSRFX01/2 * DNIS:7392 * CSID: * DURATION (mm-ss):01-58

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $355,000.00 | 01-29-2007 | 07-01-2009 | | 65 / | 158025 | 765 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Annie T. Christian (SSN:      -1308)<br>130 Virgil Drive<br>Sparks, NV 89441 | Lender: | FNBN-RESCON I, LLC<br>FNBN-RESCON I, LLC<br>4191 2ND STREET SOUTH<br>ST. CLOUD, MN 56301 |
|---|---|---|---|

**Principal Amount: $355,000.00        Initial Rate: 9.250%        Date of Agreement: April 29, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** THAT CERTAIN PROMISSORY NOTE DATED JULY 25, 2007 PAYABLE TO THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NATIONAL BANK OF ARIZONA AS EXTENDED AND MODIFIED BY THAT CERTAIN EXTENSION AND MODIFICATION AGREEMENT DATED SEPTEMBER 11, 2008 "EXTENSION AGREEMENT" AND ASSIGNED TO FNBN-RESCON I, LLC ON FEBRUARY 5, 2009.

**DESCRIPTION OF COLLATERAL.** THAT CERTAIN DEED OF TRUST DATED JULY 25, 2007 EXECUTED BY ANNIE T. CHRISTIAN, AN UNMARRIED WOMAN.

**DESCRIPTION OF CHANGE IN TERMS.** EXTEND MATURITY DATE TO JULY 1, 2009; AMEND THE LATE CHARGE LANGUAGE; CHANGE GOVERNING LAW TO MINNESOTA; ADD AN INDEMNITY PROVISION; AND THE FOLLOWING OTHER CHANGES: [illegible]

BORROWER AGREES AND ACKNOWLEDGES THAT PRIOR CHANGE IN TERMS AGREEMENT(S), PROMISSORY NOTE, LOAN AGREEMENT(S), MORTGAGE, EXTENSION AGREEMENT, AND OTHER LOAN DOCUMENTS EXECUTED AND DELIVERED TO EVIDENCE THE INDEBTEDNESS ("PRIOR LOAN DOCUMENTS") ARE BINDING OBLIGATIONS OF THE MAKERS THEREOF IN FAVOR OF LENDER, AND THE PRIOR LOAN DOCUMENTS ARE REAFFIRMED IN THEIR ENTIRETY AND INCORPORATED INTO THIS AGREEMENT BY REFERENCE, AND EXCEPT FOR THE TERMS AND CONDITIONS EXPRESSLY MODIFIED IN AND/OR INCONSISTANT WITH THIS AGREEMENT, THE TERMS AND CONDITIONS OF THE PRIOR LOAN DOCUMENTS REMAIN IN FULL FORCE AND EFFECT. (COLLECTIVELY, THE PRIOR LOAN DOCUMENTS AND THIS AGREEMENT ARE HERINAFTER REFERRED TO AS "LOAN DOCUMENTS".)

CONTEMPORANEOUS TO EXECUTION OF THIS AGREEMENT, BORROWER SHALL PROVIDE LENDER WITH VERIFICATION THAT ALL REAL ESTATE AND OTHER TAXES HAVE BEEN PAID IN FULL AND CURRENT.

BORROWER AGREES AND ACKNOWLEDGES THAT LENDER HAS FULLY PERFORMED ALL OBLIGATIONS TO BORROWER AND HAS NOT BREACHED ANY OBLIGATION TO BORROWER OR ANY TERM OR CONDITION OF THE LOAN OR LOAN DOCUMENTS, THAT THE EXISTING INDEBTEDNESS IS DUE AND PAYABLE TO LENDER AND BORROWER HAS NO CLAIM, OFFSET, COUTERCLAIM OR DEFENSE, AND WAIVES ALL CLAIMS AND DEMANDS, TO (i) PAYMENT OF THE INDEBTEDNESS, (ii) PAYMENT OF ANY OTHER SUMS DUE UNDER THE LOAN DOCUMENTS, INCLUDING SUMS PAYABLE PURSUANT TO THIS AGREEMENT, (iii) THE PERFORMANCE OF BORROWER'S OBLIGATIONS UNDER THE LOAN DOCUMENTS, OR (iv) ANY LIABILITY OR OBLIGATION UNDER THE LOAN DOCUMENTS.

IN ADDITION TO THE RIGHTS, REMEDIES, AND RECOURSE PROVIDED LENDER IN THIS AGREEMENT AND THE LOAN DOCUMENTS, UPON AN EVENT OF DEFAULT UNDER THE LOAN DOCUMENTS, LENDER MAY EXERCISE ANY ONE OR MORE OF THE FOLLOWING REMEDIES WITHOUT NOTICE OF DEFAULT AND THERE SHALL BE NO OPPORTUNITY TO CURE, NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THE PRIOR LOAN DOCUMENTS: (i) DECLARE THIS AGREEMENT IN DEFAULT AT WHICH TIME LENDER SHALL BE RELIEVED OF ANY FURTHER PERFORMANCE UNDER THE LOAN DOCUMENTS; (ii) DECLARE THE LOAN IMMEDIATELY DUE AND PAYABLE IN FULL WITHOUT NOTICE, PRESENTMENT, OR DEMAND; (iii) EXERCISE ANY REMEDY UPON DEFAULT SET FORTH IN THE LOAN DOCUMENTS; (iv) EXERCISE ANY REMEDY UPON DEFAULT AVAILABLE AT LAW OR OTHERWISE; (v) EXERCISE SETOFF AGAINST ANY BORROWER ACCOUNTS, OR OTHER ACCOUNT AVAILABLE TO LENDER. FURTHER, THE "CURE PROVISIONS" PARAGRAPH OF THE "DEFAULT" SECTION OF THIS AGREEMENT AND PRIOR LOAN DOCUMENTS IS STRICKEN AND NO LONGER EFFECTIVE, EFFECTIVE UPON EXECUTION OF THIS AGREEMENT.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**PROMISE TO PAY.** I ("Borrower") promise to pay to FNBN-RESCON I, LLC ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Fifty-five Thousand & 00/100 Dollars ($355,000.00) or so much as may be outstanding together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** I will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on July 1, 2009. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 1, 2009, with all following interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; then to principal; then to any accrued unpaid interest; then to principal; then to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may require in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current index rate upon my request. The interest rate change will not occur more often than each DAY. I understand that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate to be applied to the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 9.250% per annum. NOTICE: Under no circumstances will the interest rate on this loan be less than 9.250% per annum or more than the lesser of 15.250% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my interest payments.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. If I do make any payments before they are

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No:    4362                                                                                                Page 2

due, I understand that unless Lender agrees otherwise in writing, I will still have to continue to make any regular payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: STEARNS BANK NATIONAL ASSOCIATION, 4191 SO 2ND ST ST CLOUD, MN 56302-7338.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

**Payment Default.** I fail to make any payment when due under the Indebtedness.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** If I am in default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**EXPENSES.** If Lender institutes any suit or action to enforce any of the terms of this Agreement, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals, to the extent permitted by applicable law. I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of STEARNS County, State of Minnesota.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $15.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**COLLATERAL.** I acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Mortgage or Deed of Trust to a trustee in favor of Lender on real property located in WASHOE County, State of Nevada.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, I am not entitled to further loan advances. Advances under this Agreement, as well as directions for payment from my accounts, may be requested orally or in writing by me or by an authorized person. Lender may, but need not require that all oral requests be confirmed in writing. I agree to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of my accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on the Agreement or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Agreement if: (A) I or any guarantor is in default under the terms of this Agreement or any agreement that I or any guarantor have with Lender, including any agreement made in connection with the signing of this Agreement; (B) I or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Agreement or any other loan with Lender; or (D) I have applied funds provided pursuant to this Agreement for purposes other than those authorized by Lender.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL PROVISION.** BORROWER AGREES TO DEPOSIT $5,267.53 WITH STEARNS BANK N.A. TO BE HELD IN A BANK-CONTROLLED

# CHANGE IN TERMS AGREEMENT
## (Continued)

| Loan No: | 4362 | | Page 3 |

ACCOUNT, TO COVER A PORTION OF CONSTRUCTION COST OVER-RUNS.

**ELECTRONIC IMAGING.** BORROWER AGREES THAT ELECTRONICALLY REPRODUCED COPIES OF THE ORIGINAL PROMISSORY NOTE AND ALL ACCOMPANYING LOAN DOCUMENTS WILL BE TREATED AS ORIGINALS AND WILL BE ADMISSIBLE AS EVIDENCE TO THIS AGREEMENT. BORROWER AGREES NOT TO CHALLENGE THE AUTHENTICITY OF THE ELECTRONICALLY REPRODUCED COPIES.

**LATE CHARGE.** SHOULD BORROWER FAIL TO PAY ANY PAYMENT REQUIRED DURING THE TERM OF THIS LOAN, OR TO PAY THE INDEBTEDNESS UPON THE MATURITY, OR UPON ACCELERATION OF THIS LOAN, AND SHOULD ANY SUCH AMOUNT REMAIN UNPAID FOR A PERIOD OF TEN (10) DAYS FOLLOWING ITS DUE DATE, THEN BORROWER AGREES AND CONVENANTS TO PAY TO LENDER A LATE CHARGE IN THE AMOUNT OF FIVE PERCENT (5%) OF ANY SUCH AMOUNT, INCLUDING THE AMOUNT DUE AND PAYABLE AT MATURITY OR ACCELERATION.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of me shall not affect Lender's right to declare a default and to exercise its rights and remedies. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**SECTION DISCLOSURE.** To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
Annie T. Christian

LASER PRO Lending, Ver. 5.40.00.004 Copr. Harland Financial Solutions, Inc. 1997, 2009. All Rights Reserved. - MN C:\LASERPRO\CFI\LPL\D20C.FC 75-8575

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| Borrower: | Annie T. Christian (SSN: ****-**-1308)<br>130 Virgil Drive<br>Sparks, NV 89441 | Lender: | FNBN-RESCON I, LLC<br>FNBN-RESCON I, LLC<br>4191 2ND STREET SOUTH<br>ST. CLOUD, MN 56301 |
|---|---|---|---|

**Principal Amount: $355,000.00**     **Initial Rate: 6.750%**     **Date of Agreement: September 16, 2009**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** THAT CERTAIN PROMISSORY NOTE DATED JULY 25, 2007 PAYABLE TO THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NATIONAL BANK OF ARIZONA AS EXTENDED AND MODIFIED BY THAT CERTAIN EXTENSION AND MODIFICATION AGREEMENT DATED SEPTEMBER 11, 2008 "EXTENSION AGREEMENT" AND ASSIGNED TO FNBN-RESCON I, LLC ON FEBRUARY 5, 2009 AND FURTHER EXTENDED BY THAT CERTAIN CHANGE IN TERMS AGREEMENT DATED APRIL 29, 2009.

**DESCRIPTION OF COLLATERAL.** THAT CERTAIN DEED OF TRUST DATED JULY 25, 2007 AND MODIFIED BY THAT CERTAIN MODIFICATION OF DEED OF TRUST DATED APRIL 29, 2009, EXECUTED BY ANNIE T. CHRISTIAN, AN UNMARRIED WOMAN.

**DESCRIPTION OF CHANGE IN TERMS.** EXTEND MATURITY DATE TO JULY 01, 2010; REDUCE INTEREST RATE FLOOR; DEFER INTEREST PAYMENTS DUE FOR JULY 1, 2009, AUGUST 1, 2009, SEPTEMBER 1, 2009 AND OCTOBER 1, 2009 TO MATURITY; AND THE FOLLOWING OTHER CHANGES:

BORROWER AGREES AND ACKNOWLEDGES THAT THE PRIOR CHANGE IN TERMS AGREEMENT(S), PROMISSORY NOTE, LOAN AGREEMENT(S), MORTGAGE, EXTENSION AGREEMENT, AND OTHER LOAN DOCUMENTS EXECUTED AND DELIVERED TO EVIDENCE THE INDEBTEDNESS ("PRIOR LOAN DOCUMENTS") ARE BINDING OBLIGATIONS OF THE MAKERS THEREOF IN FAVOR OF LENDER, AND THE PRIOR LOAN DOCUMENTS ARE REAFFIRMED IN THEIR ENTIRETY AND INCORPORATED INTO THIS AGREEMENT BY REFERENCE, AND EXCEPT FOR THE TERMS AND CONDITIONS EXPRESSLY MODIFIED IN AND/OR INCONSISTENT WITH THIS AGREEMENT, THE TERMS AND CONDITIONS OF THE PRIOR LOAN DOCUMENTS REMAIN IN FULL FORCE AND EFFECT. (COLLECTIVELY, THE PRIOR LOAN DOCUMENTS AND THIS AGREEMENT ARE HERINAFTER REFERRED TO AS "LOAN DOCUMENTS".)

CONTEMPORANEOUS TO EXECUTION OF THIS AGREEMENT, BORROWER SHALL PROVIDE LENDER WITH VERIFICATION THAT ALL REAL ESTATE AND OTHER TAXES HAVE BEEN PAID IN FULL AND CURRENT.

BORROWER AGREES AND ACKNOWLEDGES THAT LENDER HAS FULLY PERFORMED ALL OBLIGATIONS TO BORROWER AND HAS NOT BREACHED ANY OBLIGATION TO BORROWER OR ANY TERM OR CONDITION OF THE LOAN OR LOAN DOCUMENTS, THAT THE EXISTING INDEBTEDNESS IS DUE AND PAYABLE TO LENDER AND BORROWER HAS NO CLAIM, OFFSET, COUNTERCLAIM OR DEFENSE, AND WAIVES ALL CLAIMS AND DEMANDS, TO (i) PAYMENT OF THE INDEBTEDNESS, (ii) PAYMENT OF ANY OTHER SUMS DUE UNDER THE LOAN DOCUMENTS, INCLUDING SUMS PAYABLE PURSUANT TO THIS AGREEMENT, (iii) THE PERFORMANCE OF BORROWER'S OBLIGATIONS UNDER THE LOAN DOCUMENTS, OR (iv) ANY LIABILITY OR OBLIGATION UNDER THE LOAN DOCUMENTS.

IN ADDITION TO THE RIGHTS, REMEDIES, AND RECOURSE PROVIDED LENDER IN THIS AGREEMENT AND THE LOAN DOCUMENTS, UPON AN EVENT OF DEFAULT UNDER THE LOAN DOCUMENTS, LENDER MAY EXERCISE ANY ONE OR MORE OF THE FOLLOWING REMEDIES WITHOUT NOTICE OF DEFAULT AND THERE SHALL BE NO OPPORTUNITY TO CURE, NOTWITHSTANDING ANY PROVISION TO THE CONTRARY IN THE PRIOR LOAN DOCUMENTS: (i) DECLARE THIS AGREEMENT IN DEFAULT AT WHICH TIME LENDER SHALL BE RELIEVED OF ANY FURTHER PERFORMANCE UNDER THE LOAN DOCUMENTS; (ii) DECLARE THE LOAN IMMEDIATELY DUE AND PAYABLE IN FULL WITHOUT NOTICE, PRESENTMENT, OR DEMAND; (iii) EXERCISE ANY REMEDY UPON DEFAULT SET FORTH IN THE LOAN DOCUMENTS; (iv) EXERCISE ANY REMEDY UPON DEFAULT AVAILABLE AT LAW OR OTHERWISE; (v) EXERCISE SETOFF AGAINST ANY BORROWER ACCOUNTS, OR OTHER ACCOUNT AVAILABLE TO LENDER. FURTHER, THE "CURE PROVISIONS" PARAGRAPH OF THE "DEFAULT" SECTION OF THIS AGREEMENT AND PRIOR LOAN DOCUMENTS IS STRICKEN AND NO LONGER EFFECTIVE, EFFECTIVE UPON EXECUTION OF THIS AGREEMENT.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

**PROMISE TO PAY.** I ("Borrower") promise to pay to FNBN-RESCON I, LLC ("Lender"), or order, in lawful money of the United States of America, the principal amount of Three Hundred Fifty-five Thousand & 00/100 Dollars ($355,000.00), together with interest on the unpaid principal balance from October 1, 2009, until paid in full.

**PAYMENT.** I will pay this loan in one principal payment of $355,000.00 plus interest on July 1, 2010. This payment due on July 1, 2010, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued interest due as of each payment date, beginning November 1, 2009, with all following interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; then to principal; then to any accrued unpaid interest; then to principal; then to any late charges; then to any unpaid collection costs; then to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. I will pay Lender at Lender's address shown above or at such other place as Lender may require in writing.

**VARIABLE INTEREST RATE.** The interest rate on this loan is subject to change from time to time based on changes in an independent index which is the WALL STREET JOURNAL PRIME RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each DAY. I understand that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. Interest on the unpaid principal balance of this loan will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.000 percentage point over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.750% per annum. NOTICE: Under no circumstances will the interest rate on this loan be less than 6.750% per annum or more than the lesser of 15.250% per annum or the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my interest payments.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

# CHANGE IN TERMS AGREEMENT
## (Continued)

| | | |
|---|---|---|
| Loan No: | 4362 | Page 2 |

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. If I do make any payments before they are due, I understand that unless Lender agrees otherwise in writing, I will still have to continue to make my regular payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations as full satisfaction of a disputed amount must be mailed or delivered to: STEARNS BANK NATIONAL ASSOCIATION, 4191 SO 2ND ST ST CLOUD, MN 56302-7338.

**LATE CHARGE.** If a payment is 15 days or more late, I will be charged 5.000% of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall be increased by adding a 2.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Agreement if any of the following happen:

   **Payment Default.** I fail to make any payment when due under the Indebtedness.

   **Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this agreement or in any agreement related to this Agreement.

   **False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

   **Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any Bankruptcy or insolvency laws.

   **Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

   **Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

   **Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**LENDER'S RIGHTS.** If I am in default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**EXPENSES.** If Lender institutes any suit or action to enforce any of the terms of this Agreement, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals, to the extent permitted by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Minnesota.

**CHOICE OF VENUE.** If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of STEARNS County, State of Minnesota.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $15.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**COLLATERAL.** I acknowledge this Agreement is secured by DEED OF TRUST FROM BORROWER TO LENDER DATED JULY 25, 2007; MODIFICATIONS OF DEED OF TRUST DATED APRIL 28, 2009 AND SEPTEMBER 16, 2009; ASSIGNMENT OF RENTS FROM BORROWER TO LENDER DATED SEPTEMBER 16, 2009.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**ADDITIONAL PROVISION.** BORROWER AGREES TO PROVIDE STEARNS BANK WITH PROOF OF PAYMENT (COPIES OF INVOICES AND CANCELLED CHECKS) AND LIEN RELEASES FOR THE FOLLOWING: 1) WORK COMPLETED IN CONNECTION WITH WASHER AND DRYER HOOK-UP (COST ESTIMATED AT $1,600 TOTAL); AND 2) LA PERKS IN THE APPROXIMATE AMOUNT OF $1,000.

FAILURE TO PROVIDE PROOF OF PAYMENT AND LIEN RELEASES TO STEARNS BANK BY OCTOBER 15, 2009 WILL BE CONSIDERED AN EVENT OF DEFAULT.

**ELECTRONIC IMAGING.** BORROWER AGREES THAT ELECTRONICALLY REPRODUCED COPIES OF THE ORIGINAL PROMISSORY NOTE AND ALL ACCOMPANYING LOAN DOCUMENTS WILL BE TREATED AS ORIGINALS AND WILL BE ADMISSIBLE AS EVIDENCE TO THIS AGREEMENT. BORROWER AGREES NOT TO CHALLENGE THE AUTHENTICITY OF THE ELECTRONICALLY REPRODUCED COPIES.

# CHANGE IN TERMS AGREEMENT
## (Continued)

| Loan No:    4362 | | Page 3 |
|---|---|---|

LATE CHARGE. SHOULD BORROWER FAIL TO PAY ANY PAYMENT REQUIRED DURING THE TERM OF THIS LOAN, OR TO PAY THE INDEBTEDNESS UPON THE MATURITY, OR UPON ACCELERATION OF THIS LOAN, AND SHOULD ANY SUCH AMOUNT REMAIN UNPAID FOR A PERIOD OF TEN (10) DAYS FOLLOWING ITS DUE DATE, THEN BORROWER AGREES AND CONVENANTS TO PAY TO LENDER A LATE CHARGE IN THE AMOUNT OF FIVE PERCENT (5%) OF ANY SUCH AMOUNT, INCLUDING THE AMOUNT DUE AND PAYABLE AT MATURITY OR ACCELERATION.

DEFERRAL OF PAYMENTS PROVISION. NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THE PROMISSORY NOTE, DEED OF TRUST OR ANY OTHER LOAN DOCUMENT, THE FOLLOWING PROVISION IS HEREBY ADDED:  LENDER HEREIN CONSENTS TO DEFER ACCRUED AND UNPAID INTEREST FOR JULY 1, 2009; AUGUST 1, 2009; SEPTEMBER 1, 2009 AND OCTOBER 1, 2009 OWING IN THE TOTAL AMOUNT OF $10,794.20 UNTIL THE MATURITY DATE OF THE NOTE.

SUCCESSORS AND ASSIGNS.  Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the indebtedness.

MISCELLANEOUS PROVISIONS.  If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement.  Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them.  In addition, Lender shall have all the rights and remedies provided in the related documents or available at law, in equity, or otherwise.  Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently.  Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of me shall not affect Lender's right to declare a default and to exercise its rights and remedies.  I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor.  Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability.  All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral.  All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.  The obligations under this Agreement are joint and several.  This means that the words "I", "me", and "my" mean each and all of the persons signing below.

SECTION DISCLOSURE.  To the extent not preempted by federal law, this loan is made under Minnesota Statutes, Section 47.59.

PRIOR TO SIGNING THIS AGREEMENT, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:

X _____
Annie T. Christian



DOC # 3559958
07/30/2007 04 01 52 PM
Requested By
FIRST CENTENNIAL TITLE COMPANY
Washoe County Recorder
Kathryn L Burke - Recorder
Fee  $33 00 RPTT  $0 00
Page 1 of 20

I hereby affirm that this document
Submitted for recording does not
Contain a social security number

_Wallace_

Signature
Print name & title _Escrow Officer_

**APN#**    0 1 4 - 1 2 3 - 1 5

**Recording Requested By**

**Name**

**Address**

**City/State/Zip**

---

DEED OF TRUST

If legal description is a metes & bounds description furnish the following information

| Legal Description obtained from | | | (type |
|---|---|---|---|
| of document), Book | Page | Document # | |
| recorded | (date) in the | | |
| County Recorder office | | | |

If Surveyor, please provide name and address

This page added to provide additional information required by NRS 111 312 Sections 1-4
(Additional recording fee applies)

This cover page must be typed

      4 3 6 2
NV Affirmation Cover Sheet – 2/06
368C NV

Assessor's Parcel Number
014-123-15
Return To
FIRST NATIONAL BANK OF NEVADA
6275 NEIL ROAD
RENO, NV 89511
Prepared By
REBECCA LEA
6275 NEIL ROAD   SECOND FLOOR,
RENO, NEVADA  89511
Recording Requested By
FIRST NATIONAL BANK OF NEVADA
6275 NEIL ROAD, RENO, NV 89511

*16/311-014-01*  —————[Space Above This Line For Recording Data]—————

# DEED OF TRUST

MIN 1001355-        4362-1

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are
also provided in Section 16

**(A) "Security Instrument"** means this document, which is dated     JULY 25, 2007                 ,
together with all Riders to this document
**(B) "Borrower"** is ANNIE T  CHRISTIAN, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument
**(C) "Lender"** is FIRST NATIONAL BANK OF NEVADA

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of      THE UNITED STATES OF AMERICA

4362                            4362

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3029  1/01

VMP® -BA(NV) (0107)
Page 1 of 15   MW 07/01          Initials _____

VMP MORTGAGE FORMS  (800)521 7291



Lender's address is  6275 NEIL ROAD, RENO, NV 89511

(D) "Trustee" is FIRST CENTENNIAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  MERS is the beneficiary under this Security Instrument  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O  Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

(F) "Note" means the promissory note signed by Borrower and dated        JULY 25, 2007
The Note states that Borrower owes Lender THREE HUNDRED FIFTY FIVE THOUSAND AND NO/100                                                                                     Dollars
(U S $355,000 00           ) plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        AUGUST 1, 2008

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property "

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower [check box as applicable]

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M) "Escrow Items" means those items that are described in Section 3

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C  Section 2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to

time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

### TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                    [Type of Recording Jurisdiction]
of                    WASHOE                    [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND BEING A PART HEREOF

Parcel ID Number  014-123-15                    which currently has the address of
245 1/2 W PUEBLO STREET                                                        [Street]
RENO                    [City], Nevada        89509        [Zip Code]
("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property " Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows

**1  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

**2  Application of Payments or Proceeds**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

**3  Funds for Escrow Items**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items "  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives



Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4  Charges, Liens  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

4362                           4362                      Initials _____

lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5  **Property Insurance**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

4362                                    4362

Initials _____

the excess, if any, paid to Borrower  Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters  If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property  Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6  Occupancy  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7  Preservation, Maintenance and Protection of the Property, Inspections  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8  Borrower's Loan Application  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9  Protection of Lender's Interest in the Property and Rights Under this Security Instrument  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

4362                          4362

Initials _____

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10  Mortgage Insurance**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund

4362                                    4362

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination

11 Assignment of Miscellaneous Proceeds, Forfeiture All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

4362                         4362

Initials _____

**12  Borrower Not Released, Forbearance By Lender Not a Waiver**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13  Joint and Several Liability, Co-signers, Successors and Assigns Bound**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14  Loan Charges**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15  Notices**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

4362                                    4362

16  **Governing Law, Severability, Rules of Construction**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

17  **Borrower's Copy**  Borrower shall be given one copy of the Note and of this Security Instrument

18  **Transfer of the Property or a Beneficial Interest in Borrower**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19  **Borrower's Right to Reinstate After Acceleration**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18

20  **Sale of Note, Change of Loan Servicer, Notice of Grievance**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law  There also might be

4362                          4362

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21  **Hazardous Substances**  As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

4362         4362         Initials _AK_         Form 3029  1/01

6A(NV) (0107)         Page 12 of 15

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

22  Acceleration, Remedies  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise)  The notice shall specify  (a) the default, (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale  If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located  Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale  Lender or its designee may purchase the Property at any sale

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein  Trustee shall apply the proceeds of the sale in the following order  (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

23  Reconveyance  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it  Such person or persons shall pay any recordation costs  Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law

24  Substitute Trustee  Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law

25  Assumption Fee  If there is an assumption of this loan, Lender may charge an assumption fee of U S $ N/A

4362                4362                Initials _AK_                Form 3029  1/01

6A(NV) (0107)                Page 13 of 15

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses

_____

_____ (Seal)
ANNIE T CHRISTIAN                              -Borrower

_____

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                                       -Borrower

4362                              4362

STATE OF NEVADA
COUNTY OF _WASHOE_

This instrument was acknowledged before me on _7/27/07_                                    by
ANNIE T  CHRISTIAN



DANIELLE R WALLACE
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No 94-1989 2  Expires October 15, 2007

_Danielle R Wallace_

Mail Tax Statements To
P O  BOX 62768
PHOENIX, AZ 85082-2768

4362                                        4362

Initials _AIC_

-6A(NV) (0107)                Page 15 of 15                            Form 3029   1/01

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this   25TH   day of   JULY, .2007          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
FIRST NATIONAL BANK OF NEVADA

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

245 1/2 W PUEBLO STREET, RENO, NV 89509
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to
the Property described in the Security Instrument, the following items now or hereafter
attached to the Property to the extent they are fixtures are added to the Property description,
and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or
intended to be used in connection with the Property, including, but not limited to, those for
the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light,
fire prevention and extinguishing apparatus, security and access control apparatus, plumbing,
bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades,
curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings,
all of which, including replacements and additions thereto, shall be deemed to be and remain
a part of the Property covered by the Security Instrument. All of the foregoing together with
the Property described in the Security Instrument (or the leasehold estate if the Security
Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security
Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has
agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations
and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow
any lien inferior to the Security Instrument to be perfected against the Property without
Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in
addition to the other hazards for which insurance is required by Section 5.

4362                                4362
MULTISTATE 1- 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3170 1/01

MW 08/00

VMP-57R (0411)
Page 1 of 3        Initials: _____
VMP Mortgage Solutions, Inc.
(800)521-7291

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

<table>
<tr><td>4362</td><td>4362</td><td>Initials: <em>OJC</em></td></tr>
<tr><td>VMP®-57R (0411)</td><td>Page 2 of 3</td><td>Form 3170 1/01</td></tr>
</table>

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)                _____ (Seal)
ANNIE T. CHRISTIAN              -Borrower                                              -Borrower

_____ (Seal)                _____ (Seal)
                               -Borrower                                              -Borrower

_____ (Seal)                _____ (Seal)
                               -Borrower                                              -Borrower

_____ (Seal)                _____ (Seal)
                               -Borrower                                              -Borrower

4362                                    4362

VMP®-57R (0411)                    Page 3 of 3                      Form 3170 1/01

**EXHIBIT "A"**
Legal Description

PARCEL 1:

Parcel 1 of Parcel Map No. 4785, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007, as Document No. 3540505.

PARCEL 2:

A non-exclusive easement for the creation of a buffer between the property referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No. 3528282, Official Records.

APN: 014-123-15

Order Number: 00161311

1

TRANSMITTAL LETTER

Date:   04/07/09

CUSTOMER - 8550.0

FDIC as Receiver for First
National Bank of Nevada
1601 Bryan Street
Dallas, TX 75201
Attn: Jennifer Henry

Please find the following Recorded Instruments enclosed: (1 Total)

| Order# | Ref# | Doc Type | Name | Order# | Ref# | Doc Type | Name |
|--------|------|----------|------|--------|------|----------|------|
| 40227435 | 4362 | ASSN | CHRISTIAN, ANNIE T. | | | | |



*First American*
*Equity Loan Services*

# Electronically Recorded Document

## Equity Loan Services Order Number:  40227435

The attached document was recorded on your behalf by Equity Loan Services via our electronic recording process.

We are returning your original document along with this cover page that includes the post-recordings information at the bottom.  To view a full image of the post-recorded document, please visit our website at www.elsonline.net .

Thank you for allowing Equity Loan Services to record your documents.



**Recorded Date/Time:**  *4/1/2009 12:22:00 PM*
**Instrument Number:**  *3745242*
**Book:** *0*
**Page:** *0*

**Document Type:**  *Assignment*
**Document Seq:**  *1*

Please visit *www.elsonline.net* to view the entire Recorded document image.

1100 Superior Ave
Cleveland, OH 44114
**TEL:** (216) 241-1278
**TOLL:** (800) 221-8683

Recording Requested By/Return To:
First American Equity Loan Services
1100 Superior Avenue, Suite 200
Cleveland, OH 44114
Attn: National Recording

Prepared By:
Federal Deposit Insurance Company
550 17th Street, NW
Washington, D.C. 20429-0002

Tax Parcel No. 014-123-15                                                    .04362

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 550 17th Street, NW, Washington D.C. 20429-0002, does hereby grant, sell, assign, transfer and convey, unto FNBN-RESCON I LLC          , a Delaware limited liability company, its successors and assigns (herein "Assignee"), whose address is 550 17th Street, NW, Washington D.C. 20429-0002, all beneficial interest under a certain Deed of Trust dated  JULY 25, 2007                               , made and executed by ANNIE T CHRISTIAN

to First Centennial Title Company                                                       , Trustee,
upon the following described property situated in WASHOE                          County, State of
NEVADA:

SEE ATTACHED EXHIBIT "A"

such Deed of Trust having been given to secure payment of $       355,000.00      , which Deed of Trust is of
                                                                (Original Principal Amount)

record in Instrument No. 3559958  √                                          of the Official
Records of  WASHOE                    County, State of  NEVADA              , together with the
note(s) and obligations therein described and the money due and to become due thereon with interest, and all
rights accrued or to accrue under such Deed of Trust.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

THIS ASSIGNMENT IS MADE WITHOUT RECOURSE, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WRITTEN OR ORAL, BY THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NATIONAL BANK OF NEVADA OR IN ITS CORPORATE CAPACITY. THE MORTGAGE LOAN, AS ASSIGNED AND MODIFIED, IS CONVEYED "AS IS" AND "WITH ALL FAULTS," WITHOUT ANY REPRESENTATION OR WARRANTY WHATSOEVER, INCLUDING AS TO COLLECTIBILITY, ENFORCEABILITY, VALUE OF COLLATERAL, ABILITY OF ANY OBLIGOR TO REPAY, CONDITION, FITNESS FOR ANY PARTICULAR PURPOSE, MERCHANTABILITY OR ANY OTHER WARRANTY, EXPRESS OR IMPLIED, BY ANY PERSON, INCLUDING THE FDIC OR ITS OFFICERS, EMPLOYEES, AGENTS OR CONTRACTORS.

Multistate Deed of Trust Assignment - Single Family - Fannie Mae Uniform Instrument                Form 3743 1/01
FALPS# FDIC2FNB3743 Rev. 01-24-09

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of ~~Mortgage~~ *Deed of Trust* on FEBRUARY 20, 2009.

ASSIGNOR:

FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NATIONAL BANK OF NEVADA

Signed, sealed and delivered
in the presence of:

By: _____
Name: M.J. LAUER
Title: ATTORNEY-IN-FACT

Witness #1
Print Name: AMY S. QUINTERO

ATTEST: _____
Name: THURMAN BLIZZARD
Title: ASSET MANAGER

Witness #2
Print Name: SHELDON COWIN

## ACKNOWLEDGMENT

State of ARIZONA
County of MARICOPA

The foregoing instrument was acknowledged before me this **FEBRUARY 20, 2009**           by **M.J. LAUER, ATTORNEY-IN-FACT**                         of **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR FIRST NATIONAL BANK OF NEVADA,** on behalf of the corporation.

_____
(Signature of person taking acknowledgment)
NOTARY PUBLIC
(Title or rank)
My Commission Expires: 04/15/2009
(Serial number, if any)

Notary Public State of Arizona
Maricopa County
Jennifer J Henry
My Commission Expires
04/15/2009

Multistate Deed of Trust Assignment - Single Family - Fannie Mae Uniform Instrument
FALPS# FDIC2FNB3743-2 Rev. 01-24-09

Form 3743 1/01

**EXHIBIT "A"**
Legal Description

PARCEL 1:

Parcel 1 of Parcel Map No. 4785, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007, as Document No. 3540505.

PARCEL 2:

A non-exclusive easement for the creation of a buffer between the property referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No. 3528282, Official Records.

APN: 014-123-15

Order Number: 00161311

CHRISTIAN
40227435                          NV
FIRST AMERICAN ELS
ASSIGNMENT

1

3

DOC # 3762867
05/26/2009 02:29:08 PM
Requested By
STEARNS BANK
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee: $18.00 RPTT: $0.00
Page 1 of 5



I the undersigned hereby affirm that this document submitted for recording does not contain any personal information.

_Wendy Sakry_
Signature

_Portfolio Manager_
Title

04-29-2009
Date

Assessor Parcel No(s): 014-123-15

RECORDATION REQUESTED BY:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN 56301

WHEN RECORDED MAIL TO:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN 56301

SEND TAX NOTICES TO:
Annie T. Christian, 130 Virgil Drive, Sparks, NV 89441

FOR RECORDER'S USE ONLY

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST dated April 29, 2009, is made and executed between Annie T. Christian, whose address is 130 Virgil Drive, Sparks, NV 89441; A SINGLE ADULT ("Grantor") and FNBN-RESCON I, LLC, whose address is FNBN-RESCON I, LLC, 4191 2ND STREET SOUTH, ST. CLOUD, MN 56301 ("Lender").

DEED OF TRUST. Lender and Grantor have entered into a Deed of Trust dated July 25, 2007 (the "Deed of Trust") which has been recorded in WASHOE County, State of Nevada, as follows:

RECORDED ON 07-30-07 AS DOCUMENT #3559958- PAGE 1-20, IN THE OFFICE OF THE WASHOE COUNTY RECORDER, NEVADA.

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in WASHOE County, State of Nevada:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND BEING A PART HEREOF

The Real Property or its address is commonly known as 245 1/2 W PUEBLO STREET, RENO,

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No:        4362                                                                 Page 2

NV  89509.  The Real Property tax identification number is 014-123-15.

MODIFICATION.  Lender and Grantor hereby modify the Deed of Trust as follows:

   EXTEND MATURITY DATE TO 07-01-09.

CONTINUING VALIDITY.  Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor *obligate* Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note").  It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification. If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF DEED OF TRUST IS DATED APRIL 29, 2009.

GRANTOR:

X _____
   Annie T. Christian

LENDER:

FNBN-RESCON I, LLC

X _____
   Authorized Officer

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No:        4362                                                          Page 3

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Nevada_                                     )
                                                      ) SS
COUNTY OF _Washoe_                                    )

This instrument was acknowledged before me on _April 30, 2009_ by Annie T.
Christian.

D. GHAFFARY
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 08-6656-2 - Expires December 10, 2011

_____
(Signature of notarial officer)

Notary Public in and for State of _Nevada_

(Seal, if any)

---

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No:        4362                                                              Page 4

---

### LENDER ACKNOWLEDGMENT

STATE OF ___Minnesota___                                    )
                                                           ) SS
COUNTY OF ___Stearns___                                    )

This instrument was acknowledged before me on ___May 20, 2009___ by _____
___Harry Vestrum, Sr. VP___                    of FNBN-RESCON I, LLC, as designated
agent of FNBN-RESCON I, LLC.

[Seal: WENDY M. SAKRY
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2010]

_____
(Signature of notarial officer)

Notary Public in and for State of ___Minnesota___

(Seal, if any)

---

LASER PRO Lending, Ver. 5.42.00.004  Copr. Harland Financial Solutions, Inc. 1997, 2009.
All Rights Reserved.  - NV/MN  C:\LASERPRO\CFI\LPL\G202.FC  TR-6675

**EXHIBIT "A"**
Legal Description

PARCEL 1

Parcel 1 of Parcel Map No 4785, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007, as Document No 3540505

PARCEL 2

A non-exclusive easement for the creation of a buffer between the property referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No 3528282, Official Records

APN 014-123-15

DOC # 3813085
10/20/2009 10:42:47 AM
Requested By
STEARNS BANK
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee: $23.00 RPTT: $0.00
Page 1 of 10

I the undersigned hereby affirm that this
document submitted for recording does not
contain any personal information.

*Wendy McSkrY*
Signature

*Portfolio Manager*
Title

09-16-2009
Date

Assessor Parcel No(s): 014-123-15

RECORDATION REQUESTED BY:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN
56301

WHEN RECORDED MAIL TO:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN
56301

SEND TAX NOTICES TO:
Annie T. Christian, 130 Virgil Drive, Sparks, NV 89441

FOR RECORDER'S USE ONLY

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated September 16, 2009, is made and executed between
Annie T. Christian, whose address is 130 Virgil Drive, Sparks, NV 89441; A SINGLE ADULT
(referred to below as "Grantor") and FNBN-RESCON I, LLC, whose address is 4191 2ND
STREET SOUTH, ST. CLOUD, MN 56301 (referred to below as "Lender").

ASSIGNMENT. For valuable consideration, Grantor hereby assigns, grants a continuing security
interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents
from the following described Property located in WASHOE County, State of Nevada:

PARCEL 1: Parcel 1 of Parcel Map No. 4785, according to the map thereof, filed in the
office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007, as
Document No. 3540505.

PARCEL 2: A non-exclusive easement for the creation of a buffer between the property

## ASSIGNMENT OF RENTS
### (Continued)

Loan No:      4362                                                                          Page 2

referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No., 3528282, Official Records.

The Property or its address is commonly known as   247 W PUEBLO STREET, RENO, NV 89509. The Property tax identification number is 014-123-15.

THIS ASSIGNMENT IS GIVEN TO SECURE   (1) PAYMENT OF THE INDEBTEDNESS AND   (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.   THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE.   Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

GRANTOR'S REPRESENTATIONS AND WARRANTIES.   Grantor warrants that:

Ownership.   Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

Right to Assign.   Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

No Prior Assignment.   Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

No Further Transfer.   Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.   Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents.   For this purpose, Lender is hereby given and granted the following rights, powers and authority:

Notice to Tenants.   Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

Enter the Property.   Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

Maintain the Property.   Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the

**ASSIGNMENT OF RENTS**
(Continued)

Loan No:      4362                                                                                              Page 3

Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Nevada and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, or (C) to make repairs to the Property then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts.

## ASSIGNMENT OF RENTS
### (Continued)

Loan No:        4362                                                             Page 4

The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**DEFAULT.** At Lender's option, Grantor will be in default under this Assignment if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Assignment or in any agreement related to this Assignment.

**Default on Other Payments.** Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Assignment or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment

**ASSIGNMENT OF RENTS**

Loan No:       4362                (Continued)                                Page 5

penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Assignment, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law. Fees and expenses shall include permissible fees that Lender, Trustee, or both incur, if either or both are made parties to any action to enjoin foreclosure or to any legal proceeding that Grantor institutes. The fees and expenses are secured by this Assignment

**ASSIGNMENT OF RENTS**
(Continued)

Loan No:        4362                                                                            Page 6

and are recoverable from the Property.

EXHIBIT A. SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF.

MISCELLANEOUS PROVISIONS.  The following miscellaneous provisions are a part of this
Assignment:

Amendments.  What is written in this Assignment and in the Related Documents is
Grantor's entire agreement with Lender concerning the matters covered by this Assignment.
To be effective, any change or amendment to this Assignment must be in writing and must
be signed by whoever will be bound or obligated by the change or amendment.

Caption Headings.  Caption headings in this Assignment are for convenience purposes only
and are not to be used to interpret or define the provisions of this Assignment.

Governing Law.  With respect to procedural matters related to the perfection and
enforcement of Lender's rights against the Property, this Assignment will be governed by
federal law applicable to Lender and to the extent not preempted by federal law, the laws of
the State of Nevada.  In all other respects, this Assignment will be governed by federal law
applicable to Lender and, to the extent not preempted by federal law, the laws of the State
of Minnesota without regard to its conflicts of law provisions.  However, if there ever is a
question about whether any provision of this Assignment is valid or enforceable, the
provision that is questioned will be governed by whichever state or federal law would find
the provision to be valid and enforceable.  The loan transaction that is evidenced by the
Note and this Assignment has been applied for, considered, approved and made, and all
necessary loan documents have been accepted by Lender in the State of Minnesota.

Choice of Venue.  If there is a lawsuit, Grantor agrees upon Lender's request to submit to
the jurisdiction of the courts of STEARNS County, State of Minnesota.
(Initial Here _____ )

Merger.  There shall be no merger of the interest or estate created by this assignment with
any other interest or estate in the Property at any time held by or for the benefit of Lender
in any capacity, without the written consent of Lender.

Interpretation.  (1)  In all cases where there is more than one Borrower or Grantor, then all
words used in this Assignment in the singular shall be deemed to have been used in the
plural where the context and construction so require.  (2)   If more than one person signs
this Assignment as "Grantor," the obligations of each Grantor are joint and several.  This
means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors.  If
Borrower and Grantor are not the same person, Lender need not sue Borrower first, and
that Borrower need not be joined in any lawsuit.  (3)   The names given to paragraphs or
sections in this Assignment are for convenience purposes only. They are not to be used to
interpret or define the provisions of this Assignment.

No Waiver by Lender.  Grantor understands Lender will not give up any of Lender's rights
under this Assignment unless Lender does so in writing.  The fact that Lender delays or
omits to exercise any right will not mean that Lender has given up that right.  If Lender does
agree in writing to give up one of Lender's rights, that does not mean Grantor will not have
to comply with the other provisions of this Assignment.  Grantor also understands that if
Lender does consent to a request, that does not mean that Grantor will not have to get

## ASSIGNMENT OF RENTS
### (Continued)

Loan No:      4362                                                                                    Page 7

Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any person may change his or her address for notices under this Assignment by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court finds that any provision of this Assignment is not valid or should not be enforced, that fact by itself will not mean that the rest of this Assignment will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Assignment even if a provision of this Assignment may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Nevada as to all Indebtedness secured by this Assignment.

**DEFINITIONS.** The following words shall have the following meanings when used in this Assignment:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Annie T. Christian.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth

Loan No:    4362                                                  Page 8

in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means Annie T. Christian.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means FNBN-RESCON I, LLC, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note dated September 16, 2009, in the original principal amount of $355,000.00 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT. THIS DOCUMENT IS EXECUTED ON SEPTEMBER 16, 2009.

GRANTOR:

X _Annie T. Christian_
Annie T. Christian

**ASSIGNMENT OF RENTS**
**(Continued)**

Loan No:      4362                                                    Page 9

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Nevada_                                          )
                                                          ) SS
COUNTY OF _Washoe_                                         )

This instrument was acknowledged before me on _September 29, 2009_ by Annie T. Christian.

ABBEY BUSCAY
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 00-64922-2 - Expires November 23, 2012

_____
(Signature of notarial officer)

Notary Public in and for State of _Nevada_

(Seal, if any)

---

LASER PRO Lending, Ver. 5.46.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009.
All Rights Reserved.  - NV/MN  C:\LASERPRO\CFI\LPL\G14.FC  TR-6675

## EXHIBIT A TO ASSIGNMENT OF RENTS

### COLLATERAL DESCRIPTION & DESCRIPTION OF LEASES

PARCEL 1: Parcel 1 of Parcel Map No. 4785, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007 as Document No. 3540505.

PARCEL 2: A non-exclusive easement for the creation of a buffer between the property referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No. 3528282.

**LEASE 1:**

| | |
|---|---|
| Property Address: | 247-A West Pueblo |
| | Reno, NV 89509 |
| Lessee: | Alison Hotten |
| Lease Type: | Annual |
| Date of Lease: | 08-01-09 through 08-01-10 |
| Rental Amount: | $1,000.00 |
| Deposit Amount: | $ 500.00 |

**LEASE 2:**

| | |
|---|---|
| Property Address: | 247-B West Pueblo |
| | Reno, NV 89509 |
| Lessee: | Kimberly Boehner |
| Lease Type: | Annual |
| Date of Lease: | 08-01-09 through 08-01-10 |
| Rental Amount: | $1,000.00 |
| Deposit Amount: | $ 500.00 |

**DOC # 3813086**
10/20/2009 10:42:47 AM
Requested By
STEARNS BANK
Washoe County Recorder
Kathryn L. Burke - Recorder
Fee:   $17.00 RPTT: $0.00
Page 1 of 4

I the undersigned hereby affirm that this document submitted for recording does not contain any personal information.

_Windy Wyksy_
Signature

_Portfolio Manager_
Title

09-16-2009
Date

Assessor Parcel No(s): 014-123-15

RECORDATION REQUESTED BY:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN 56301

WHEN RECORDED MAIL TO:
FNBN-RESCON I, LLC; FNBN-RESCON I, LLC; 4191 2ND STREET SOUTH; ST. CLOUD, MN 56301

SEND TAX NOTICES TO:
Annie T. Christian, 130 Virgil Drive, Sparks, NV 89441

**FOR RECORDER'S USE ONLY**

## MODIFICATION OF DEED OF TRUST

THIS MODIFICATION OF DEED OF TRUST dated September 16, 2009, is made and executed between Annie T. Christian, whose address is 130 Virgil Drive, Sparks, NV 89441; A SINGLE ADULT ("Grantor") and FNBN-RESCON I, LLC, whose address is FNBN-RESCON I, LLC, 4191 2ND STREET SOUTH, ST. CLOUD, MN 56301 ("Lender").

DEED OF TRUST. Lender and Grantor have entered into a Deed of Trust dated July 25, 2007 (the "Deed of Trust") which has been recorded in WASHOE County, State of Nevada, as follows:

DEED OF TRUST RECORDED ON 07-30-07 AS DOCUMENT #3559958- PAGES 1-20, IN THE OFFICE OF THE WASHOE COUNTY RECORDER, NEVADA AND MODIFICATION OF DEED OF TRUST DATED 04-29-09 RECORDED ON 05-28-09 AS DOCUMENT #3762867, PAGE 1-5, IN THE OFFICE OF THE WASHOE COUNTY RECORDER, NEVADA.

REAL PROPERTY DESCRIPTION. The Deed of Trust covers the following described real property located in WASHOE County, State of Nevada:

## MODIFICATION OF DEED OF TRUST

Loan No:        4362                          (Continued)                          Page 2

PARCEL 1: Parcel 1 of Parcel Map No. 4785, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2007, as Document No. 3540505.

PARCEL 2:  A non-exclusive easement for the creation of a buffer between the property referred to in said Parcel 1 and the property to the West of said Parcel 1, recorded May 3, 2007, as Document No. 3528282, Official Records

The Real Property or its address is commonly known as  247 W PUEBLO STREET, RENO, NV 89509.  The Real Property tax identification number is 014-123-15.

MODIFICATION. Lender and Grantor hereby modify the Deed of Trust as follows:

EXTEND MATURITY DATE TO 07-01-2010; REDUCE INTEREST RATE; DEFER INTEREST PAYMENTS DUE FOR JULY 2009 THROUGH OCTOBER 2009.

CONTINUING VALIDITY.  Except as expressly modified above, the terms of the original Deed of Trust shall remain unchanged and in full force and effect.  Consent by Lender to this Modification does not waive Lender's right to require strict performance of the Deed of Trust as changed above nor obligate Lender to make any future modifications.  Nothing in this Modification shall constitute a satisfaction of the promissory note or other credit agreement secured by the Deed of Trust (the "Note").  It is the intention of Lender to retain as liable all parties to the Deed of Trust and all parties, makers and endorsers to the Note, including accommodation parties, unless a party is expressly released by Lender in writing.  Any maker or endorser, including accommodation makers, shall not be released by virtue of this Modification.  If any person who signed the original Deed of Trust does not sign this Modification, then all persons signing below acknowledge that this Modification is given conditionally, based on the representation to Lender that the non-signing person consents to the changes and provisions of this Modification or otherwise will not be released by it.  This waiver applies not only to any initial extension or modification, but also to all such subsequent actions.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MODIFICATION OF DEED OF TRUST AND GRANTOR AGREES TO ITS TERMS.  THIS MODIFICATION OF DEED OF TRUST IS DATED SEPTEMBER 16, 2009.

GRANTOR:

X _____
  Annie T. Christian

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No:       4362                                                    Page 3

---

LENDER:

FNBN-RESCON I, LLC

x _~Harley Vestrum~_____
   Authorized Officer  HARLEY VESTRUM

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Nevada_____        )
                                          ) SS
COUNTY OF _Washoe_____        )

This instrument was acknowledged before me on _September 29, 2009_ by Annie T.
Christian.

> ABBEY BUSCAY
> Notary Public - State of Nevada
> Appointment Recorded in Washoe County
> No: 00-84922-2 - Expires November 23, 2012

_Apbuscay_____
             (Signature of notarial officer)

Notary Public in and for State of _Nevada_

(Seal, if any)

## MODIFICATION OF DEED OF TRUST
### (Continued)

Loan No:      4362                                              Page 4

---

### LENDER ACKNOWLEDGMENT

STATE OF _Minnesota_                          )
                                              ) SS
COUNTY OF _Stearns_                           )

This instrument was acknowledged before me on _10-14-09_ by _Harley_
_Vestrum_, _Senior Vice President_ of FNBN-RESCON I, LLC, as designated
agent of FNBN-RESCON I, LLC.

```
WENDY M. SAKRY
NOTARY PUBLIC-MINNESOTA
My Comm. Exp. Jan. 31, 2010
```

_____
(Signature of notarial officer)

Notary Public in and for State of _Minnesota_

(Seal, if any)

---

LASER PRO Lending, Ver. 5.46.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009.
All Rights Reserved.   - NV/MN  C:\LASERPRO\CFI\LPL\G202.FC  TR-6675